1   Mark D. Petersen (State Bar No. 111956)
     mpetersen@fbm.com
2   Matthew S.L. Cate (State Bar No. 295546)
     mcate@fbm.com
3   Farella Braun + Martel LLP
     235 Montgomery Street, 17th Floor
4   San Francisco, CA  94104
     Telephone:  (415) 954-4400
5   Facsimile:  (415) 954-4480

6   Attorneys for Defendant
     CHENGBEN WANG
7

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12  CUBIC TELECOM LIMITED, as        Case No. 14-cv-02956-EDL
     Assignee of PEREGRINE NETWORK,
13  INC.,                   **DEFENDANT CHENGBEN WANG'S**
                          **OPPOSITION TO PLAINTIFF'S MOTION**
14           Plaintiff,      **FOR SUMMARY JUDGMENT**

15       vs.                 Hearing:   August 4, 2015
                            Time:      9:00 a.m.
16  CHENGBEN WANG A/K/A PETER      Dept:      Courtroom E
     WANG,                     Judge:    Hon. Elizabeth D. Laporte
17
                Defendant.
18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

30560\4940821.4

1

2

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ..................................................................................... 1

      A.      The Parties Have No Direct Relationship ...................................................... 1

      B.      Peregrine Network, Inc. Falters ..................................................................... 2

      C.      Peregrine Meets Mr. Wang ............................................................................ 3

      D.      Mr. Wang Asks for Licenses and Other Product-Related Rights; Hendrick
            Promises Them ............................................................................................... 3

      E.      Peregrine Conceals Material Facts About Its Financial Health ..................... 5

      F.      Mr. Wang Promotes Peregrine and NeoVista Products in China ................... 6

      G.      Peregrine Folds; Cubic Eventually Sues ........................................................ 7

III.    LEGAL STANDARD ................................................................................................ 8

IV.     EVIDENTIARY OBJECTIONS ................................................................................ 8

V.      ARGUMENT ............................................................................................................. 10

      A.      Cubic Has Not Produced Sufficient Evidence to Support Its Claims ............ 10

      B.      A Jury Could Find That Mr. Wang was Defrauded ....................................... 11

            1.      Peregrine Made False Promises to Induce Mr. Wang to Sign the
                  Note ..................................................................................................... 11

            2.      Peregrine Actively Concealed the Material Fact of Its Poor
                  Financial Health ................................................................................. 14

VI.     CONCLUSION .......................................................................................................... 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

- i -

30560\4940821.4

# TABLE OF AUTHORITIES

**Page**

## FEDERAL COURT CASES

*Beyene v. Coleman Sec. Servs., Inc.,*
    854 F.2d 1179 (9th Cir. 1988) ................................................................. 8

*State Farm Fire & Cas. Co. v. Martin,*
    872 F.2d 319 (9th Cir. 1989) .................................................................. 8

*United States v. Dibble,*
    429 F.2d 598 (9th Cir. 1970) .................................................................. 9

## STATE COURT CASES

*Carrow v. Arnold,*
    No. 182-K, 2006 WL 3289582 (Del. Ch. Oct. 31, 2006) ...................... 11

*Grady v. Easley,*
    45 Cal. App. 2d 632 (1941) .................................................................. 11

*In re Nine Systems Corporation Shareholders Litigation,*
    No. 3940-VCN, 2013 WL 4013306, at *2 (Del. Ch. July 31, 2013) ...................... 14

*In re Wayport, Inc. Litig.,*
    76 A.3d 296 (Del. Ch. 2013) ................................................................. 16

*Lore v. Girard Trust Corn Exch. Bank,*
    121 A.2d 309 (Del. Super. 1956) ........................................................... 11

*Transdigm Inc. v. Alcoa Global Fasteners, Inc.,*
    No. CIV.A. 7135-VCP, 2013 WL 2326881 (Del. Ch. May 29, 2013) ...................... 14

*Vichi v. Koninklijke Philips Elects., N.V.,*
    85 A.3d 725 (Del. Ch. 2014) ........................................................... 11, 14

## STATUTORY AUTHORITIES

Del. Code Ann. tit. 6,
    § 1-201(b)(21) ..................................................................................... 10
    § 3-301 ................................................................................................ 10
    § 3-302(a) ........................................................................................... 11
    § 3-305(a)-(b) ..................................................................................... 11
    § 3-305(a)(2) ....................................................................................... 11

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P.
    56(a) ..................................................................................................... 8
    56(c)(2) ................................................................................................ 8
    56(c)(4) ................................................................................................ 8

Fed. R. Evid.
    602 ................................................................................................... 8, 9
    901(a) ............................................................................................... 8, 9

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

- ii -

30560\4940821.4

1

**STATE RULES AND REGULATIONS**

2

Local Rule 7-3(a) ........................................................................................................................ 8

3

**OTHER AUTHORITIES**

4

Restatement of Torts
    § 551 ................................................................................................................................ 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

30560\4940821.4

I. **INTRODUCTION**

While this may be a simple case, as Plaintiff asserts, it is not merely about the supposed promises made on a piece of paper that Cubic Telecom Limited alleges—but has not sufficiently proved—that it owns. Rather, this is about a company not involved in this case, so starving for a quick cash infusion that its leaders said whatever it took to get Defendant Chengben Wang to consider investing. Because a contract based on a lie is no contract at all, the terms of the fraudulently induced Promissory Note at issue in this action are not enforceable.

To prevail at this stage, Cubic must proffer sufficient, admissible evidence to establish that no reasonable jury would believe that Mr. Wang was tricked into a promise by men desperate for his cash. It also must prove that Cubic actually has the right to enforce the Note. Cubic has failed to meet its burden on these issues. Mr. Wang is thus entitled to have a jury determine these issues, and this Court should deny Cubic's Motion.

II. **FACTUAL BACKGROUND**

A. **The Parties Have No Direct Relationship.**

Mr. Wang is a self-made businessman, now retired, who primarily focused on the management of real estate development. Declaration of Chengben Wang ("Wang Decl.") ¶ 2. Prior to the dealings that gave rise to this case, Mr. Wang had little or no experience with the sale of stock, high-tech/information technology companies, or startup financing. *Id.* ¶ 2. Mr. Wang is 73 years old. He has poor eyesight. He grew up in China. And while fluent in English, Mr. Wang sometimes struggles to overcome language and cultural barriers that stand between him and native-English speakers. *Id.* ¶ 3.

Mr. Wang has no idea what Cubic does. He has never dealt with the company. Until October 2013, when out of the blue Cubic threatened to sue him, Mr. Wang had never even heard of Cubic. Cubic alleges that it rightfully obtained a Promissory Note that Mr. Wang signed in favor of a third party.

//

//

//

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                30560\4940821.4

1    That third party is Peregrine Network, Inc., a failed Delaware corporation that sought to

2 sell mobile broadband services to laptop and tablet users.[1] It grew out of a related Arizona

3 corporation by the same name, run by the same officers, and fell short of funds needed to operate

4 as a going concern.  *See* Declaration of Mark Petersen ("Petersen Decl.") ¶ 3, Ex. 3 at Cubic

5 000985-91.  Cubic tries to trace its ownership of the Note from Peregrine through Qualcomm,

6 Inc.  In short, and as described below, Cubic's only role in this case is that of an unrelated

7 outsider looking to make money off of an elderly man who was duped into signing a promissory

8 note for a dying company by men who told him what they knew he wanted to hear.

9    **B.    Peregrine Network, Inc. Falters.**

10    By March 2011, roughly seven months before Mr. Wang came along, Peregrine Network

11 begged its investors for cash, sending an "Investor Update" that warned: "Unless the Company

12 receive [sic] emergency funding by tomorrow . . . the Company will cease operations at close of

13 business Friday . . . due to insolvency."  *Id.* ¶ 3, Ex. 1 at Cubic001440.  Peregrine had

14 "aggressively" searched far and wide for a bank loan but had "been rejected as not meeting

15 current commercial lending requirements."  *Id.* at Cubic001443.

16    But there was hope.  Qualcomm Inc. offered to make a $3 million loan "as a strategic

17 partner."  *Id.* at Cubic001442.  As Peregrine explained a month later, it needed to "fully fund" its

18 business to secure Qualcomm's loan.  *Id.* ¶ 3, Ex. 2 at Cubic001447.  Negotiations continued for

19 several months, and the Arizona company effectively shifted all of its business operations into the

20 new, Delaware corporation.  One thing had not changed, however: Peregrine still needed cash,

21 and quickly.  By September 26, 2011, Peregrine was finalizing terms to secure a loan from

22 Qualcomm.  Realizing the dim future of a company that by its own admission had been rejected

23 by banks across America, Qualcomm conditioned its $3 million loan on Peregrine's ability to

24 //

25 //

26

---

[1] The company had assumed all business operations of an Arizona-incorporated Peregrine
27 Network, Inc. *See* Declaration of Mark Petersen ("Petersen Decl.") ¶ 3, Ex. 3 at Cubic000986.
For simplicity's sake, this statement of facts refers to both entities as Peregrine Network or
28 Peregrine.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                - 2 -                30560\4940821.4

"have sufficient funds to operate for longer than a few weeks." *Id.* ¶ 3, Ex. 3 at Cubic000983.  In other words, as it explained on September 26, 2011, Peregrine needed money—and a lot of it—by mid-October or it would effectively close down as an independent company.

### C.  Peregrine Meets Mr. Wang.

Three days after that solicitation to its investors, Peregrine's Chairman serendipitously met Mr. Wang.  *See* Wang Decl. ¶ 5, Ex. 1 at PW000028; Petersen Decl. ¶ 6, Ex. 9 ("Wang Dep.") at 13:6-7, 14:19-25.  The Chairman was John Hendrick, who also was President and Chief Executive Officer of a medical-device manufacturing company called NeoVista, Inc.  Hendrick and Mr. Wang had had no prior dealings, but Hendrick quickly pitched Mr. Wang to invest in Peregrine.  Wang Decl. ¶ 12, Ex.1 at PW000028; Wang Dep. at 16:1-3.  He explained that he could give Mr. Wang a "good value of a share, good deal."  Wang Dep. at 17:18-19.  And he suggested that investing in Peregrine would give Mr. Wang "a lot of business exposure to other people in the South Bay."  *Id.* at 17:21-23.

Hendrick bolstered the soundness of the investment by explaining that "he [had] a contract with HP" and by fostering the notion that "it's a long-time established company."  *Id.* at 20:21-21:18.  In all, everything Hendrick said—including that Peregrine had some type of collaboration with Qualcomm, Inc.—suggested a viable, healthy company.  It was, as Mr. Wang later put it, a "very believable story."  *Id.* at 21:19-22:2.  Mr. Wang responded the next day by offering to invest $1 million in the company.  But not for nothing:  Mr. Wang explained in detail what he wanted in return.

### D.  Mr. Wang Asks for Licenses and Other Product-Related Rights; Hendrick Promises Them.

In particular, Mr. Wang initially said he would invest $1 million in exchange for shares of Peregrine and "the rights to his products, to produce and market in China with payment of certain Royalty to you."  Wang Decl. ¶ 12, Ex. 1 at PW000028.  He also told Hendrick, who served as the Chief Executive Officer of a company called NeoVista, Inc., that the investment would be in exchange for the ability and right both to house China-based manufacturing for a "NeoVista project" and to market the NeoVista product "during the terms of approval of IP Rights."  *Id.*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956          - 3 -                    30560\4940821.4

Hendrick, writing back from a NeoVista e-mail address, explained that Peregrine did "not have a material product." *Id.* But he also affirmed that the NeoVista proposal was "highly doable." *Id.* Most of Hendrick's e-mails actually discussed Mr. Wang's NeoVista proposal—going so far as expressly committing "to help you set up the operations in China . . . free of charge." *Id.* Mr. Wang thanked Hendrick for his promise to help Mr. Wang set up operations in China. He was so excited at the prospect that he noted that he already was "working on getting 50 patients in China to try your product." *Id.* Hendrick replied: "I am in agreement that as soon as we can move into the market I would like to start manufacturing in China with you." *Id.* at PW000026. While the details required further discussion, Hendrick promised Mr. Wang that he "look[s] forward to that." *Id.*

Two days later, and about a week before Mr. Wang signed the Note, Hendrick urged Mr. Wang to call him on his cell phone. *Id.* at PW000025. Hendrick wanted to discuss "what it would take to get a profitable business" started "in China with our product." *Id.* Hendrick hoped to discuss the particulars in great detail so Mr. Wang could be prepared to move forward. *Id.* The next day, Mr. Wang wrote that "John Hendrick will let me have rights to manufacture and market NeoVista product, in China." *Id.* at PW000023.

Hendrick, always writing from his NeoVista e-mail, took the lead on wooing Mr. Wang on Peregrine's behalf. *See* Wang Dec. ¶ 7. For example, Peregrine's general counsel, Mark Foster, sent Mr. Wang copies of the unexecuted Note and related documents, but he told Mr. Wang that "John Hendrick will be in touch with you" to discuss them.[2] *See id.* ¶ 12, Ex. 1 at PW000024. Throughout their dealings, all of Hendrick's e-mails to Mr. Wang came from an en e-mail address ending in "@neovistainc.com." *See generally*, *id.* at PW000020-28. And the day before Mr. Wang signed the note, Hendrick wrote to Mr. Wang and asked when the two could talk to "finalize" the deal, signing his e-mail as "President & CEO" of "Neovista, Inc." *See id.* ¶ 14, Ex. 3 at PW000982.

---

[2] Foster's correspondence to Mr. Wang came, as it always did, from a Peregrine e-mail address. *See generally* Wang Decl. ¶ 12, Ex. 1 at PW000020-28.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

- 4 -

30560\4940821.4

1   In Mr. Wang's mind, Peregrine and NeoVista were one and the same, and his willingness

2   to invest was precisely because of the total package he understood he was getting.  *See* Wang

3   Dep. at 16:8-18, 18:12-19:15, 24:17-23, 28:1-16, 35:19-25, 62:1-62:25, 81:22-82:12, 86:2-18,

4   100:12-101:8, 111:8-18; Wang Decl. ¶¶ 7-11.  And, because Hendrick had discussed China so

5   much, including discussions about providing free equipment for Mr. Wang to use, Mr. Wang

6   clearly understood he was going to get an agreement to produce and sell the Peregrine and

7   NeoVista products and services in China.  *See* Wang Dep. at 25:18-26:3, 27:8-15, 41:1-12, 84:12-

8   15, 112:8-113:7.

9       **E.      Peregrine Conceals Material Facts About Its Financial Health.**

10  Hendrick and Peregrine said a lot to Mr. Wang, especially about NeoVista and operations

11  in China.  *Id.*  But they did not tell him that Peregrine was falling apart.  They did not share with

12  Mr. Wang, for example, the information in the prior Investor Updates.  Mr. Wang had never even

13  seen those updates before signing the Note.  Wang Decl. ¶ 21.  So neither Hendrick nor anyone

14  else at Peregrine ever told Mr. Wang that Peregrine had very recently, and repeatedly, been mere

15  days away from shutting down.  Mr. Wang was also unaware, because Peregrine hid it from him,

16  that banks had rejected the company left and right as an unfit borrower.  *See* Petersen Decl. ¶ 3,

17  Ex. 1 at Cubic001443 ("[D]espite having aggressively solicited commercial loans nationwide,

18  Peregrine has been rejected as not meeting current commercial lending requirements.").  Mr.

19  Wang only vaguely was aware that Qualcomm had provided some type of financing to Peregrine,

20  the terms of which required him to pledge his Peregrine shares to Qualcomm.  *See* Wang Dep. at

21  30:14-20.  But Peregrine officers never explained *why* that financing was so critical to the

22  company.  Mr. Wang had believed the financing was more of a partnership, not least because

23  Hendrick had depicted the loan as such a good thing.  *Id.* at 20:21-22:2.  But Mr. Wang had no

24  idea that the company was on the brink of collapse.  *See* Wang Decl. ¶¶ 23-25.  In short, Hendrick

25  and Peregrine hid from Mr. Wang the fact that their company was about to expire.

26  Meanwhile, Peregrine needed to make good on its obligations to Qualcomm.  On October

27  6, 2011, the two companies amended the terms of Qualcomm's loan, under which, as Peregrine

28  later told its investors, Peregrine needed $500,000 by October 15, 2011, and an additional $1.7

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

- 5 -

30560\4940821.4

1   million by November 30, 2011.  *See* Petersen Decl. ¶ 3, Ex. 6 at Cubic000960.  The day after

2   finalizing the amendments to the Qualcomm deal, Hendrick wrote Mr. Wang that "we will need

3   to get this done by Monday."  *See* Wang Decl. ¶ 13, Ex. 2 at PW000697.  He set up a dinner, at

4   which Mr. Wang would sign the Promissory Note.  *Id.*

5        Thus, on the evening of October 11, 2011, Mr. Wang met Hendrick and Foster,

6   Peregrine's attorney, to sign the Note at a busy restaurant.  They brought the Note.  And,

7   surrounded by the clatter of fellow diners, encouraged by the men's representations and promises,

8   and not, of course, dissuaded by the damning facts they had concealed from him, Mr. Wang

9   signed.  Wang Dep. at 29:4-13.  Mr. Wang could not quite make out the document's wording, not

10  least because he had forgotten to bring his glasses.  *Id.*  But Mr. Wang trusted Hendrick, who had

11  told him much about NeoVista and about licensing and about China.  And Hendrick knew that

12  Mr. Wang trusted him.  Just about a week before, Mr. Wang had written:

13
14        John, since I have met you and known you, I feel great about you.
          You are the only person that is trust worthy [sic] in the high tech
          industry.  You've kept your promises, whether you said seriously
15        or casually.  I want to be your friend and associate with you in
          business.

16  Wang Decl. ¶ 12, Ex. 1 at PW000028.

17        **F.**        **Mr. Wang Promotes Peregrine and NeoVista Products in China.**

18        As a result of Mr. Wang's understanding of his deal, supported by Hendrick's willingness

19  to play along, Mr. Wang believed he would be working with both Peregrine and NeoVista to sell

20  their products and services in China.  *See* Wang.  Decl. ¶¶ 7-11; Wang Dep. at 18:12-19:8.  He

21  began to discuss the products with his business and personal contacts in China.  For example, he

22  spoke with friends in China about Peregrine's mobile-broadband service in early December 2011.

23  *See* Wang Decl. ¶ 16, Ex. 4 at PW001315; *see also id.* ¶ 15.  Mr. Wang shared this friend's

24  concerns about Peregrine's network with Hendrick and Foster.  *Id.* ¶ 16, Ex. 4 at PW001315.

25  Foster also previously had sent Mr. Wang some information related  to "medical device

26  conference," which would relate to the NeoVista line of business.  *Id.*

27        Likewise, on December 15, 2011, Mr. Wang e-mailed Hendrick specifically to discuss

28  meetings Mr. Wang had just concluded in China.  Wang.  Decl. ¶ 17, Ex. 5 at PW001335-36.  Mr.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

- 6 -

30560\4940821.4

1  Wang had discussed NeoVista's product with the Chinese State Food and Drug Administration

2  ("SFDA"), which explained to Mr. Wang how he would have to proceed to import and produce

3  NeoVista's medical devices.  *See id.*  In that same e-mail, Mr. Wang shared that he had discussed

4  Peregrine's product and services with other people in Beijing, and promised to report back "of

5  what we can do with the said product" there.  *Id.*

6       Just two months before, Hendrick gushed over Mr. Wang's proposals regarding the

7  Chinese market for NeoVista and Peregrine.  Now, having gotten from Mr. Wang what he

8  needed, Hendrick kept it short:  "[G]ood to hear from you. . . [S]tay warm. . . . [C]all when you

9  can."  *Id.*  They never spoke about the Chinese market for either product again.  Wang Decl. ¶ 18.

10      **G.      Peregrine Folds; Cubic Eventually Sues.**

11      Meanwhile, Peregrine had been trying to raise the money it needed to satisfy the terms of

12  its loan from Qualcomm.  Having obtained what it needed from Mr. Wang—a fraudulently

13  secured agreement to invest $500,000—Peregrine tried to use the Note to entice its investors and

14  potential investors to provide additional funds.  *See* Wang Decl. ¶ 20, Ex. 7 at PW001364-66.

15  The effort failed.  On December 5, 2011, Qualcomm sent Peregrine a Notice of Default.  Compl.

16  ¶ 9.

17      So  Peregrine was not as Mr. Wang had been led to believe.  And it started to become

18  clear to him that Hendrick, despite his expansive promises, did not intend to enter a deal with Mr.

19  Wang related to the NeoVista products.  *See* Wang Decl. ¶ 18.  In short, Mr. Wang began to

20  understand that he had been duped.  Believing now that there was no deal at all, Mr. Wang

21  concluded that the Note was void and declined to give his money to the men who had misled him.

22  *See, e.g.*, Dep. at 116:19-25.

23      Cubic alleges that in the following months, Peregrine and Qualcomm negotiated a deal by

24  which Qualcomm foreclosed on Peregrine's assets, including the Note, and then sold them to

25  Cubic.  *See* Compl. ¶¶ 10-14.  On that basis, Cubic brought this case.

26  //

27  //

28  //

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

- 7 -

30560\4940821.4

1   **III.    LEGAL STANDARD**

2       The Court can grant Cubic's motion only if Cubic establishes that there is no genuine

3   issue of any material fact and that, as a result, it is entitled to judgment as a matter of law.  Fed. R.

4   Civ. P. 56(a).  In considering the Motion, the Court must review the facts in a light most

5   favorable to Mr. Wang.  *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.

6   1989).

7   **IV.    EVIDENTIARY OBJECTIONS**

8       Pursuant to Federal Rule of Civil Procedure 56(c)(2) and Local Rule 7-3(a), Mr. Wang

9   objects to the Declaration of Fiona O'Sullivan ("O'Sullivan Decl.") and all the evidence that

10  Cubic seeks to introduce through it.  The Declaration fails to provide any basis for nearly all of

11  O'Sullivan's assertions, and she fails to lay any foundation for the attached exhibits.[3]

12      Documents that "have not had a proper foundation laid to authenticate them cannot

13  support a motion for summary judgment."  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179,

14  1182 (9th Cir. 1988) (citation omitted).  Moreover, a declaration used to support a motion for

15  summary judgment must "show that the . . . declarant is competent to testify on the matters

16  stated."  Fed. R. Civ. P. 56(c)(4).  It is not enough for a declarant to state that the document

17  attached to her declaration is a "true and correct copy" of the given piece of evidence.  *Beyene*,

18  854 F.2d at 1182.

19      Cubic failed to lay the foundation for the following exhibits it has offered in support of its

20  Motion for Summary Judgment:

21

| **Exhibits & Declarations** | **Objections** |
|---|---|
| "Notice of Disposition By Private Sale" (Ex. 1 to O'Sullivan Decl.)  Cited in  Pl.'s Mot. for Summ. J. ("Cubic Mot.") at 2. | Not authenticated (Fed. R. Evid. 901(a)); Lack of personal knowledge (Fed. R. Evid. 602). |

22

23

24

25

26

---

27  [3] The sole exception is O'Sullivan's assertion that she is a "Legal and Compliance Officer at

28  Cubic Telecom Limited."  But it remains unclear what that job entails, how long Ms. O'Sullivan has had the position, and how that position qualifies her to submit a declaration in this case.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                - 8 -                30560\4940821.4

| "UCC Financing Statement" (Ex. 2 to O'Sullivan Decl.)  Cited in Cubic Mot. at 2-3. | Not authenticated (Fed. R. Evid. 901(a)); Lack of personal knowledge (Fed. R. Evid. 602). |
|---|---|
| "Amended and Restated Foreclosure Sale Agreement" (Ex. 3 to O'Sullivan Decl.)  Cited in Cubic Mot. at 3. | Not authenticated (Fed. R. Evid. 901(a)); Lack of personal knowledge (Fed. R. Evid. 602). |
| "Amended and Restated Bill of Sale" (Ex. 4 to O'Sullivan Decl.)  Cited in Cubic Mot. at 3. | Not authenticated (Fed. R. Evid. 901(a)); Lack of personal knowledge (Fed. R. Evid. 602). |
| "Stock Certificate No. 29" (Ex. 5 to O'Sullivan Decl.)  Cited in Cubic Mot. at 5. | Not authenticated (Fed. R. Evid. 901(a)); Lack of personal knowledge (Fed. R. Evid. 602). |

O'Sullivan "did not sign the exhibit[s], and [s]he states no facts at all from which [the Court] could conclude that [s]he could identify the signatures of those who did." *See United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). She "tells us nothing to show how [s]he knows the document to be a correct copy." *Id.* "The fact that [O'Sullivan] is employed by [Cubic] and that the [documents were] supposedly signed by somebody who is also [working for Cubic] is patently insufficient to provide [her] with the necessary personal knowledge to authenticate" them it. *Id.* These exhibits cannot support Cubic's motion.

The same is especially true for the several documents to which Cubic is not even a party. *See* O'Sullivan Decl., Ex. 1 (Notice of Sale, signed only by Qualcomm vice president); Ex. 2 (UCC Financing Statement, not signed by *anyone*, listing only Peregrine and Qualcomm as interested parties); Ex. 4 (Bill of Sale, signed only by a Qualcomm vice president); Ex. 5 (Stock Certificate, signed only by Peregrine executives).

Likewise, O'Sullivan provides no foundation for any of the supporting assertions she makes in paragraphs 2 through 8 of her Declaration. For example, she asserts that

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956

- 9 -

30560\4940821.4

1
2
3
4

> [O]n or about March 15, 2012, Qualcomm issued a Notice of Disposition By Private Sale to Peregrine and other parties as set forth therein ("*Notice of Sale*"). . . . Pursuant to the Notice of Sale, Qualcomm sought to foreclose on certain assets of Peregrine as set forth in Attachment B to the Notice of Sale, including the Note, through a private sale.

5
6
7
8
9

O'Sullivan Decl. ¶ 2. O'Sullivan has not explained how she knows this. She does not say how and why she knows what Qualcomm, a company for which she does not (and did not) work, did and when. How can she? She does not work there. Given that the only assertion for which it is apparent she has personal knowledge is her name and title at Cubic, the Court should strike O'Sullivan's Declaration in its entirety.

10

## V.    **ARGUMENT**

11
12
13
14
15
16

This Court should deny Cubic's Motion because Cubic has not met its burden on summary judgment. First, Cubic has not provided sufficient evidence—admissible or otherwise—to establish beyond reasonable dispute its right to enforce the Note. Second, triable issues of fact remain as to whether Peregrine's leaders tricked Mr. Wang into agreeing to invest. Finally, there are also issues of fact about whether Peregrine concealed material facts about the financial health of the company to induce Mr. Wang's agreement.

17

### A.    **Cubic Has Not Produced Sufficient Evidence to Support Its Claims.**

18
19
20
21
22

The Promissory Note is payable to Peregrine Network "or its permitted assigns, transferees and successors." So, any entity to which Peregrine validly assigned or transferred the Note is a "holder" entitled to enforce it. *See* Del. Code Ann. tit. 6, § 1-201(b)(21) (defining "holder"); *id.* at § 3-301 (providing that holder is entitled to enforce instrument). Cubic has not proved that it holds the note as a result of a valid assignment or transfer.

23
24
25
26
27
28

Cubic alleges that it is Peregrine's assignee, and that it holds the Note. Compl. ¶¶ 1, 15; see also, Cubic Mot. at 2-3. But Cubic has failed to prove this allegation in support of its Motion. It has not submitted admissible evidence tracing the Note's assignment or transfer from Peregrine to Qualcomm to Cubic. The only items of potential evidence that Cubic offers on this essential element of its cause of action are the documents for which Declarant O'Sullivan failed to provide any foundation, as shown above. The Court cannot consider those exhibits. And because Cubic

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                    - 10 -                    30560\4940821.4

1    has not offered any other evidence to establish its right to enforce the Note under section 3-301,

2    the Court should deny the Motion.

3         **B.    A Jury Could Find That Mr. Wang was Defrauded.**

4         Delaware courts will consider extrinsic evidence to establish whether a party was

5    fraudulently induced into signing a contract. *See, e.g.*, *Carrow v. Arnold*, No. 182-K, 2006 WL

6    3289582, at *8 (Del. Ch. Oct. 31, 2006). So, even if Cubic had provided sufficient evidence that

7    it is a holder of the Note, Cubic cannot enforce a note that is the product of fraud.[4] *See, e.g.*,

8    *Grady v. Easley*, 45 Cal. App. 2d 632, 642 (1941) ("One who has been induced to enter into a

9    contract by false and fraudulent representations may rescind the contract."). The elements of

10   fraud are (1) a false representation, (2) knowledge of that falsity or reckless indifference to the

11   truth, (3) intent to induce another to act, (4) justifiable reliance by the victim, and (5) damages

12   caused by the misrepresentation. *See Vichi v. Koninklijke Philips Elects., N.V.*, 85 A.3d 725, 773-

13   74 (Del. Ch. 2014).

14        **1.    Peregrine Made False Promises to Induce Mr. Wang to Sign the Note.**

15        False promises of future conduct or intent generally will not constitute fraudulent

16   representations. *See Carrow*, 2006 WL 3289582, at *8. But even *Carrow* acknowledged that

17   some promises can amount to fraud. *Id.* at *9. Specifically, "a promisor could make an oral

18   promise knowing that, either because of exigencies of time or circumstance, the promisee will not

19   notice or understand if the promise is omitted or changed in the final written agreement." *Id.*

20        Those are, in fact, the circumstances of this case. First, pressed by the tight deadline

21   imposed by Qualcomm, Peregrine hounded Mr. Wang to close a deal. Second, throughout the

---

23   [4] A "holder in due course" is not subject to a defense that the obligor was fraudulently induced to

24   sign a negotiable instruction. *See* Del. Code Ann. tit. 6, § 3-305(a)-(b), cmt. 1-2 (a holder in due
     course is subject to fraud-in-the-execution defenses but not defenses arising from fraudulent

25   inducement). But an entity that is not a holder in due course is subject to any defense against
     enforcement of a contract. *See id.* at § 3-305(a)(2); *Lore v. Girard Trust Corn Exch. Bank*, 121

26   A.2d 309, 310 (Del. Super. 1956). Section 3-302(a) provides that "holder in due course" is one
     who takes note "without notice that the instrument is overdue." Cubic acknowledges that it knew

27   that the Note had not been paid when Cubic acquired it. *See* Petersen Decl. ¶ 5, Ex. 7 at 3-4.
     Accordingly, Mr. Wang has the same defenses against Cubic, including fraud in the inducement,

28   that he would have against Peregrine.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956          - 11 -                      30560\4940821.4

1   discussions with Mr. Wang, Hendrick affirmatively peppered his correspondence and

2   conversations with promises to deliver what Mr. Wang truly sought: the right to make, market

3   and distribute in China the goods and services of both Peregrine and NeoVista.  *See, e.g.*, Wang

4   Decl. ¶ 12, Ex. 1 at PW000025-28; Wang Dep. at 25:18-26:3, 27:8-15, 41:1-12, 84:12-15, 112:8-

5   113:7.  From start to finish, Peregrine tried to take advantage both of the trusting relationship that

6   Hendrick had created with Mr. Wang, and of Mr. Wang's understanding of what he was getting in

7   return for his investment.  Practically every time the two men corresponded and spoke, Mr. Wang

8   was reminded of the NeoVista deal overtly through Hendrick's supportive statements about the

9   future prospects of a Chinese market for NeoVista.  And every time the men corresponded,

10  Hendrick subtly, but no less effectively, linked the NeoVista connection to the Peregrine deal

11  through Hendrick's e-mail address: the day before Mr. Wang signed the Note, Hendrick wrote to

12  Mr. Wang to discuss "finaliz[ing]" the deal, signing the e-mail as NeoVista president and CEO.

13  *See* Wang Decl. ¶ 14, Ex. 3 at PW000982.

14      Cubic points to e-mail statements indicating that Hendrick told Mr. Wang that

15  manufacturing of the NeoVista project "is a separate arrangement from Peregrine," that Mr.

16  Wang's attorney questioned the relationship of Peregrine to NeoVista, and that Peregrine's

17  counsel told Mr. Wang and his attorney that "[w]e think the China deal is a separate deal with

18  NeoVista." Cubic Mot. at 11.  Cubic contends that these assertions override any other

19  representations that Hendrick made to Mr. Wang, and that it was not reasonable for Mr. Wang to

20  rely on Hendrick's statements about NeoVista projects.  *See id.*

21      But a reasonable jury could find that Hendrick, on a mission for Peregrine, purposely and

22  improperly muddied the waters to induce Mr. Wang to invest.  Moreover, Mr. Wang reasonably

23  could believe that he was investing in Peregrine on the condition that he was also getting the

24  NeoVista deal.  Why would he not believe this?  Hendrick told him repeatedly how excited they

25  were to help Mr. Wang begin manufacturing the NeoVista product in China—"free of charge,"

26  meaning of course, in exchange for his investment in Peregrine.[5]  On top of those promises, there

27

28  ─────────────────────
[5] A jury surely would consider it likely that Hendrick would make such an offer only to someone
on the brink of investing a sizable amount of money into his failing company.  Why else would a

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                - 12 -                          30560\4940821.4

1    remains Mr. Wang's persistent assertion—before negotiations began, while talks continued, and

2    throughout this litigation—that he understood that he was getting a package deal in exchange for

3    his $500,000.  Thus, a jury could still reasonably find that Peregrine led Mr. Wang into believing

4    that what might appear to be two "separate" agreements were nonetheless contingent upon each

5    other.

6         Moreover, even simple deals often involve multiple, related, but "separate" agreements.

7    As an illustration, consider Cubic's own insufficiently evidenced effort to prove that it is the Note

8    holder.  That argument depends on four "separate" but apparently related agreements.  Likewise,

9    Cubic seeks to shoehorn the integration clause of the Stock Purchase Agreement onto the Note

10   itself, arguing in essence that the documents contemplated each other.  It happens all the time, and

11   Mr. Wang was reasonable in believing that his Note to Peregrine was just a piece of the more

12   comprehensive agreement Hendrick led him to believe he was making.  Specifically, Hendrick

13   promised that, as a result of Mr. Wang's involvement in Peregrine, Mr. Wang would also be

14   getting the NeoVista project in China.  And it is obvious that Mr. Wang believed this before,

15   during, and after the events giving rise to this case.  Secure in the understanding of Hendrick's

16   and Peregrine's promises, Mr. Wang signed the Note expecting it to be the first of several

17   agreements he needed to sign.  Many more agreements did follow—but none had anything to do

18   with granting Mr. Wang licenses to produce and market products in China.  He did not get what

19   Peregrine and Hendrick promised.

20        Mr. Wang acknowledges that the Note does not specifically mention the deal that Mr.

21   Wang thought he was getting.  But Foster, and Hendrick, whom he deeply trusted, were pressing

22   Mr. Wang to sign the Note on a tight deadline, away from his attorney, and at a dinner-time

23   setting.  Mr. Wang felt rushed and had little time to read closely—a task in any event that was

24   rendered more difficult by Mr. Wang's failure to bring his glasses.  *See* Wang Dep. at 29:2-8.

25   Besides, Mr. Wang thought, why would Hendrick go back on his word?  The choice here,

26   compared to a simple signing at an office, *followed* by a celebratory dinner, makes Peregrine's

27

28   man busy running two companies offer to do anything "free of charge"?

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                    - 13 -                    30560\4940821.4

1    conduct all the more questionable.  Cubic has failed to establish that no reasonable jury could

2    agree.  Accordingly, the Court should deny Cubic's Motion for Summary Judgment.

3              **2.      Peregrine Actively Concealed the Material Fact of Its Poor Financial
                         Health.**
4

5         "In addition to arising from overt misrepresentations, fraud also may occur through

6    deliberate  concealment of material facts, or by silence in the face of a duty to speak." *Vichi*, 85

7    A.3d at 773-74.  Moreover, fraud based on "active concealment does not require a showing that

8    the defendant had a pre-existing duty to speak." *Transdigm Inc. v. Alcoa Global Fasteners, Inc.*,

9    No. 7135-VCP, 2013 WL 2326881, at *6 (Del. Ch. May 29, 2013).

10        In *In re Nine Systems Corporation Shareholders Litigation*, for example, the Chancery

11   Court of Delaware held that a group of plaintiffs had sufficiently pleaded fraud by active

12   concealment in a case similar to Mr. Wang's.  *See* No. 3940-VCN, 2013 WL 4013306, at *2 (Del.

13   Ch. July 31, 2013).  In particular, the plaintiffs alleged that an investor considering whether to sell

14   shares in a corporation back to the company had "specifically asked" company officers "for an

15   update on the Corporation's activities and business prospects." *Id.*  The corporate officers

16   responded with some information but "did not mention" that the company was negotiating a

17   potential merger. *Id.*  They also suggested to the investor that a particular buyback price was "fair

18   under the circumstances." *Id.*  The investor claimed, after the true facts came out, that he would

19   not have sold his shares back to the company for the price he did had the corporate officers

20   revealed the material fact of the merger talks. *Id.*

21        While *Nine Systems* considered the sufficiency of the pleadings, rather than the

22   sufficiency of the evidence on a motion for summary judgment, it remains instructive.  Mr. Wang

23   has produced sufficient evidence to support a jury finding that he likewise had specifically asked

24   Hendrick and Foster for information on Peregrine's business prospects. *See* Wang Decl. ¶ 12, Ex.

25   1 at PW000025-26.  On October 2, 2011, for example, Mr. Wang asked Hendrick for copies of

26   Peregrine's agreement with Hewlett-Packard, other agreements, and "information regarding

27   outstanding stock and funds committed." *See id.*  In light of Mr. Wang's established difficulty

28   communicating in English (especially in writing), Hendrick and Foster surely knew that Mr.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                          - 14 -                          30560\4940821.4

1    Wang sought information about the company's viability.  Hendrick responded to this request,

2    before launching into a discussion about NeoVista, by promising that Foster, the attorney, would

3    send a copy of the HP agreement and information about the potential Qualcomm deal.  *See id.*

4    But despite Mr. Wang's request, neither Hendrick, Foster, nor anyone else at Peregrine ever sent

5    Mr. Wang the most obvious status reports— the Investor Updates that painted a more accurate

6    and clear picture of where the company stood.  *See Id.* at PW000024-26.

7         Specifically, no one ever told Mr. Wang, as Peregrine had previously told its existing

8    investors, that the company had been one day away from closing—"due to insolvency"—just

9    seven months before.  *See* Petersen Decl. ¶ 3, Ex. 1 at Cubic001440.  And no one told him that, at

10   that same time, "despite having aggressively solicited commercial loans nationwide, Peregrine

11   has been rejected as not meeting current commercial lending requirements."  *Id.* at Cubic001443.

12        Instead, Hendrick and Foster gave Mr. Wang one-sided information about the company's

13   prospects—for example, sending public-relations materials about partnerships with Hewlett-

14   Packard, while actively obscuring, in the face of requests for business information, the fact that

15   Peregrine continually was in danger of collapsing.  *See* Wang Decl. ¶ 12, Ex. 1 at PW000024-26.

16   Worse, Foster explicitly told Mr. Wang and his counsel that "Peregrine investors have also

17   committed to funding or obtaining" the money needed to keep Qualcomm from seizing Peregrine

18   under the terms of the Qualcomm loan.  *See id.* at PW000022.  Hendrick made the same

19   representation to Mr. Wang.  *See* Wang Dep. at 122:18-123:6.  But it was not true.  Five days

20   after that representation to Mr. Wang, the Peregrine Board of Directors sent another Investor

21   Update asking for the money it told Mr. Wang it had already collected.  Petersen Decl. ¶ 3, Ex. 4

22   at Cubic000977.

23        In particular, the October 9, 2011, Investor Update explained that Peregrine had "firm

24   commitments or actual funds . . . for about $75,000" of half a million dollars, and it needed to

25   raise the remainder within one week.  *Id.*  And that was just a part of the money Peregrine needed

26   to raise to keep Qualcomm from seizing Peregrine stock: as the Board explained, Peregrine "still

27   need[s] to raise an additional $1.2M by November 30th[.]"  *Id.*  In other words, Peregrine needed

28   to raise more than $1.6 million in about six weeks to avoid defaulting on its loan to Qualcomm.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                - 15 -                              30560\4940821.4

1    That is materially different than the "commitment" about which Foster and Hendrick told Mr.

2    Wang.  Mr. Wang never knew that Peregrine investors had not committed actual cash to satisfy

3    the Qualcomm loan terms, because no one at Peregrine told him or corrected the false information

4    that Foster gave him.[6]  Even assuming that the prior statements about Peregrine investors' level of

5    funding were true on October 5, 2011, when Foster made them, they clearly were not true on

6    October 9, 2011, when Peregrine issued the Investor Update.  Mr. Wang had not yet signed the

7    Note.

8            Because these prior statements gave Mr. Wang the impression that Peregrine investors had

9    fully funded what was needed to satisfy Qualcomm's loan terms, Foster and Hendrick "assumed a

10    duty to update [his] statement to the extent that subsequent events rendered [his] representation

11    materially misleading."  *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 324 (Del. Ch. 2013) (citing

12    Restatement of Torts § 551).  Neither Foster nor Hendrick updated his statement.  Once they

13    knew that it was no longer true—if it ever had been true—their silence in the face of that duty

14    "placed [them] in the same position as if [they] knowingly made a false representation in the first

15    instance."  *Id.*

16            As Mr. Wang has explained, and as a jury potentially could agree, Peregrine officials,

17    despite their obvious knowledge of the perilous condition of their company, continued to

18    represent that the investment would provide "good value of a share, [a] good deal"  while

19    withholding critical information that Mr. Wang sought and that would have led him to conclude

20    that the offer to invest was not worth the risk.  Wang Dep. at 17:18-19; Wang Decl. ¶¶ 26-27.

21    Because disputed issues of fact remain about whether Peregrine defrauded Mr. Wang by

22    withholding material information it should have provided, the Court should deny Cubic's Motion.

23    //

24    //

25

26    [6] Mr. Wang anticipates that Cubic will argue that Mr. Wang could not reasonably rely on Foster's
statement about Peregrine's existing investors' commitment, because just below that assertion,
27    Mr. Wang's counsel explained that something in that response was "far from certain."  *See* Wang
Decl. ¶ 12, Ex. 1 at PW000022. But that comment applied to the assertion that "the company will
28    be likely to obtain bank financing as result of all of the foregoing statements of fact.  *See id.*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956                    - 16 -                    30560\4940821.4

1    VI.    __CONCLUSION__

2          Cubic alleges, but has not proved, that Mr. Wang owes it money arising from a Note Mr.

3    Wang was tricked into signing.  Because genuine disputes still exist as to these material issues,

4    the Court must deny Cubic's motion.

5
     Dated: June 30, 2015                              FARELLA BRAUN + MARTEL LLP
6

7
                                               By:   /s/  Mark D. Petersen
8                                                    Mark D. Petersen (SBN 111956)
                                                     mpetersen@fbm.com
9                                                    Matthew S.L. Cate (SBN 295546)
                                                     mcate@fbm.com
10                                                   Farella Braun + Martel LLP
                                                     235 Montgomery Street, 17th Floor
11                                                   San Francisco, CA  94104
                                                     Telephone:  (415) 954-4400
12                                                   Facsimile:  (415) 954-4480

13                                                   Attorneys for Defendant
                                                     CHENGBEN WANG
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

Opposition to Plaintiff's
Motion for Summary Judgment /14-cv-02956          - 17 -                    30560\4940821.4